| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 EXPIRES 5-31-05 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| United States Capital Police Office of the General Counsel Office of the Chief 119 D Street, N.E. Washington, D.C. 20510-7218 | The Honorable John Sullivan United States House of Representatives 114 Cannon House Office Building Washington, D.C. 20518 |

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT Wednesday, 7/23/03 | 7. TIME (A.M. OR P.M) 1:00 p.m. (+ or −) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

See attached supplement incorporated herein

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

See attached documents

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side)

Vehicle damage; see attached documents

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

See attached supplement incorporated herein

11. WITNESSES

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Elizabeth Bartheld | 114 Cannon House Office Building, Wash., DC 20518 |
| Officers Humphrey and Moore | 119 D Street, N.E., Washington, D.C. 20510-7218 |
| John Sullivan | 114 Cannon House Office Building, Wash., DC 20518 |

12. (See instructions on reverse) AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY and Economic Loss 2,253,942 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) 2,253,942 |
|---|---|---|---|

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) *John Sullivan* | 13b. Phone number of signatory | 14. DATE OF CLAIM 3/17/05 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 18 U.S.C.A. 287.) |

95-108
Previous editions not usable

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2



GOVERNMENT EXHIBIT
05-1418(CKK)

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

Complete all items – Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THIS CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim And may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,

to Director, Torts Branch  
Civil Division  
U.S. Department of Justice  
Washington, DC 20530

and to the  
Office of Management and Budget  
Paperwork Reduction Project (1105-0008)  
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes. If yes give name and address of insurance company (Number, street, city, State, and Zip Code) and policy number. ☐ No

**See Supplement**

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

**Yes**

17. If deductible, state amount

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (*It is necessary that you ascertain these facts*)

**See Supplement**

19. Do you carry public liability and property damage insurance? ☐ Yes. If yes, give name and address of insurance carrier (Number, street, city, State, and Zip Code) ☐ No

SF 95 (Rev. 7-85) BACK

* U.S. GOVERNMENT PRINTING OFFICE: 1989--241-175

John Sullivan
Federal Tort Claim
U.S. Capitol Police

# FEDERAL TORT CLAIM
## SUPPLEMENT

### Basis of Claim

On Wednesday, July 23, 2003, approximately 1:00 p.m., Congressman Sullivan was a passenger in a vehicle driven by Elizabeth Bartheld, a member of his staff. The vehicle, traveling northbound, approached the security stop at the South Barricade of the Cannon House Office Building. At the security stop, both Congressman Sullivan and Ms. Bartheld presented identification to Officer Humphrey, a Capitol Police Officer who was stationed at the entrance to the South Barricade, identifying Congressman Sullivan as a member of the House and Ms. Bartheld as a member of his staff.

After both individuals presented their identification, Officer Humphrey motioned by hand to Ms. Bartheld to proceed through the barrier. At the time that Officer Humphrey motioned for Ms. Bartheld to proceed forward, the barrier was down and the light indicating that she could proceed was yellow. Officer Moore was stationed in the South Kiosk and was responsible for raising and lowering the barrier. Officer Humphrey motioned to Officer Moore while Ms. Bartheld's vehicle was approaching the barrier. Officer Humphrey stated in the police report that he was used a hand signal to inform Officer Moore to keep the barrier down while the vehicle proceeded through. However, when the vehicle approached the barrier, Officer Moore unexpectedly raised the barrier which struck the front bumper and undercarriage of the vehicle. Officer Moore stated in the police report that he was on the phone when Officer Humphrey motioned to him and he thought that Officer Humphrey was telling him to raise the barrier, not lower it. Officer Moore further stated that he did not see the vehicle approaching the barrier at the time he raised the barrier.

Due to the force by which the barrier was raised and collided with the vehicle, the airbags inside the vehicle were deployed. Congressman Sullivan suffered serious injury to his left eye caused by the deployment of the airbags. He was rushed to the George Washington University Medical Center for treatment.

### Injuries Sustained

Mr. Sullivan's initial injuries when he arrived at the George Washington University Medical Center Emergency Room included abrasions to his face and injuries arising from the deployment of the airbag and the impact of the vehicle on a stationary security barrier.

Mr. Sullivan's initial diagnoses were Hyphema, Traumatic Iritis and Corneal Abrasions. As a result of these conditions, Mr. Sullivan developed a cataract, traumatic glaucoma, increased

John Sullivan
Federal Tort Claim
U.S. Capitol Police

intraocular pressure, vitreous prolapse, iridodialysis, zonular disruption, and post-traumatic peripheral retinal breaks

Mr. Sullivan's condition has required surgery for Phacomulsifaction of the "visually significant" cataract, corrective contact lenses, protective eyewear and medication.

### Amount of Claim (Box 12)

Congressman Sullivan's sight has been severely affected by the actions of the officers. He is a Member of Congress whose ability to effectively serve his constituents depends heavily on his ability to see and communicate and understand visual cues. Congressman Sullivan has been serving in the House of Representatives representing the First District of Oklahoma since 2002. Congressman Sullivan has achieved many legislative successes for Oklahoma, earning him a reputation as a hard worker. His hard work has been recognized by Congressional leaders, as evidenced by his appointment to the Energy and Commerce Committee. The Energy and Commerce Committee is widely regarded as the most prized and powerful because it holds the largest jurisdiction of any committee in Congress.

Prior to his successful federal Congressional service, Congressman Sullivan served in the Oklahoma House of Representatives for seven years. Congressman Sullivan also was involved in the gasoline and diesel fuel industry, trucking companies, real estate, and an internet business.

Congressman Sullivan is married with four children ages 11, 7, 4, 1. In his spare time he enjoys spending time with his family, reading, hunting, fishing, and golfing. The visual impairment has dramatically affected his quality of life and made it difficult for him to participate in these activities because his depth perception has been significantly impaired. For both leisure and as a very important part of his job as a Congressman, Congressman Sullivan is required to read and comprehend visual cues. As a result of this negligent incident, Congressman Sullivan gets headaches when he reads because his one good eye becomes extremely strained in attempting to compensate for the loss of vision in his left eye. Congressman Sullivan finds it difficult to read for extended period of time. Many life activities are dramatically impacted by his disability.

Congressman Sullivan's impairment to his depth perception has caused his problems in both his professional and personal life. It is now extremely difficult for Congressman Sullivan to recognize people from a distance which often makes other think that he is ignoring them, when in fact he just cannot see them due to his poor vision. Congressman Sullivan has difficulty hunting and golfing as he is unable to focus on any target. In addition, Congressman Sullivan finds it difficult to drive at night and avoids doing so. When Congressman Sullivan does operate a motor vehicle, primarily

John Sullivan
Federal Tort Claim
U.S. Capitol Police

during the day, he is extremely careful, but often hits the side of curbs due to his lack of depth perception and impairment of his peripheral vision.

Immediately after the incident, Congressman Sullivan was unable to see out of his left eye and continued to be unable to see out of his left for approximately two to three months after the incident. Congressman Sullivan underwent surgery on his eye to alleviate the pain and try to regain some sight. It has taken almost one year for his eye to recover from such surgery, but Congressman Sullivan's vision is still significantly impaired.

Congressman Sullivan more than likely will never regain full sight in his left eye. Due to his injury, he will be forced to wear corrective lenses indefinitely. While the loss of Congressman Sullivan's eyesight is invaluable, Congressman Sullivan has suffered and will suffer economic damages in the range of $1,753,942 and out-of-pocket and noneconomic damages in the amount of $500,000, for a total expected loss of $2,253,942.

Congressman Sullivan also incurred costs for medical care, hotel stays and property damage as follows:

| EXPENSE | AMOUNT |
| --- | --- |
| Medical out-of-pocket | $11,701.00 |
| Hotel Stays | 1,198.30 |
| Property Damage | 5,011.06 |
| TOTAL | $17,910.36 |

## Legal Argument

**Officer Humphrey and Officer Moore Were Negligent in Allowing the Barrier to be Raised While the Vehicle in Which Congressman Sullivan Was Traveling Proceeded Over the Barrier.**

Pursuant to 28 U.S.C. § 1346, the United States shall be liable for tort damages caused by the negligence of its employees, acting within the scope of their employment, in the same manner and to the same extent as private parties. See 28 U.S.C. § 1346(b). In this case, employees of the U.S. Capitol Police, a federal agency of the legislative branch, caused Congressman Sullivan's injuries by negligently performing their job duties. The Officers had a duty to Congressman Sullivan to allow the

3

John Sullivan
Federal Tort Claim
U.S. Capitol Police

vehicle that he was traveling in to proceed through the entrance to the House Office Building without the mechanical metal barrier being raised. The officers breached this duty of care owed to Congressman Sullivan resulting in Congressman Sullivan's injuries. The Officers' negligence occurred when he failed to properly usher the vehicle and used incorrect hand signals while using a cell phone. They were not paying full time and attention to their duties and responsibilities. They breached their duties and it was foreseeable that a person could be injured by their negligence. Congressman Sullivan suffered painful and permanent injuries as a direct and proximate result of the negligence of the Officers.

The scope of the Officer's employment while stationed at the road barrier included checking the identification of each individual trying to gain access to the House Building Campus and for raising and lowering the road barrier at the appropriate times. Congressman Sullivan was injured while the Officers were acting within the scope of their employment with the Federal Government.

The duty placed upon the United States in a tort action under the Federal Tort Claims Act ("FTCA") is defined by the law of the state where the negligence occurred. See Richards v. United States, 369 U.S.1 (1962). The alleged negligence of the Capitol Police occurred on government property within the District of Columbia. In an action for negligence in the District of Columbia, the plaintiff must demonstrate a duty of care, a breach of that duty, and a resulting injury proximately caused by the breach. See District of Columbia v. Chinn, 839 A.2d 701, 706 (D.C. 2003). Clearly, the Officers acted negligently, as it is defined by the District of Columbia, in the scope of their employment and are liable for Congressman Sullivan's injuries.

Congressman Sullivan will endure medical care, treatment costs and discomfort for the remainder of his life as a direct and proximate result of the negligence of the U.S. Capitol Police.

The Officers stationed at the barrier at issue owed Congressman Sullivan a duty of care when operating the metal road barrier. Each of the Officers involved were given the responsibility, as a part of their employment duties, to raise and lower the road barrier at the appropriate times. The Officers had a duty not to raise the barrier while a vehicle was traveling over the barrier, especially when the Officer told the driver of the vehicle to proceed over the lowered barrier, as is the case here. Where a police officer causes an injury, the duty of care is the conduct of a reasonably prudent police officer in like circumstances. See id. at 707. In this case, both of the Officers failed to act as a reasonably prudent officer.

First Officer Humphrey breached his duty of care to Congressman Sullivan by instructing the vehicle that he was traveling in to proceed over the lowered road barrier without first ensuring that Officer Moore, the individual manually responsible for raising and lowering the road barrier, had clearly understood that the barrier was to be lowered and remain lowered while the vehicle proceeded

4

John Sullivan
Federal Tort Claim
U.S. Capitol Police

into the House Building campus. Officer Humphrey negligently used a hand signal to inform Officer Moore to keep the barrier down while the vehicle proceeded through. However, the hand signal to keep the barrier lowered was not clear to Officer Humphrey, who was on the phone, and the barrier was raised while the vehicle was proceeding forward and struck the bumper and undercarriage of the vehicle. Officer Humphrey breached his duty of care to Congressman Sullivan by failing to ensure that the barrier would remain lowered at the vehicle proceeded through the entrance.

Second, compounding the lack of clear signals from Officer Humphrey was Officer Moore's simultaneous use of the telephone which may have distracted him so that he was not paying enough attention to the signaling of Officer Humphrey. Officer Moore breached his duty of care to Congressman Sullivan by raising the barrier when the vehicle in which Congressman Sullivan was traveling passed over it. Officer Moore was on the phone at the time that Officer Humphrey signaled to him to keep the barrier lowered. Officer Moore should have been paying careful attention to the signals made by Officer Humphrey and should have seen the vehicle proceeding over the traffic barrier. A reasonably prudent officer would endeavor to give his full attention to these signals, particularly when raising the barrier directly in front of an approaching vehicle.

The Officers' conduct proximately caused Congressman Sullivan's injuries. But for the negligence in the officers' communications, the barrier would not have been raised under the vehicle, the air bags would not have deployed, and the injuries to Mr. Sullivan's eye would not have occurred. Therefore, the negligence of Officers Humphrey and Moore caused the extensive injury to Congressman Sullivan's eyesight. Clearly, the Offices were negligent in their duties at the barrier and are liable for the injury to Congressman Sullivan's eyes.