UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05CV01418 |
| | ) | |
| UNITED STATES OF AMERICA, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF EDWARD G. DUNCAN

I, Edward G. Duncan, do hereby state and declare that:

1. I am the Deputy Director for Federal Employees' Compensation, Office of Workers' Compensation Programs (OWCP), United States Department of Labor, and as part of my duties and responsibilities, I have been delegated the responsibility for administering the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101 *et seq.*

2. I was provided and have reviewed a copy of the complaint filed by plaintiff John Sullivan in the above-captioned matter.

3. I directed a search to be made of the records of OWCP, which disclosed that no claim for compensation pursuant to the FECA has been filed with the OWCP based on the events alleged in the complaint to have occurred on July 23, 2003 near the Cannon House Office Building, Washington, D.C.



GOVERNMENT
EXHIBIT
2
05-1418(CKK)

4.    I was asked to render an opinion concerning the question of whether the FECA would cover any injury sustained as a result of the failure of Capitol Police officers to safely operate the security barrier near the Cannon House Office Building on July 23, 2003.

5.    I issued an opinion, a true and correct copy of which is attached hereto as Attachment A, which concluded that "there is a significant possibility that a claim by plaintiff John Sullivan for compensation for physical injuries, and any consequential medical, physical, or emotional conditions, resulting from the improper operation of the security barrier on July 23, 2003 would be covered under the FECA."

6.    This opinion is based upon the assumption that all factual statements in the documents provided to me are true and that no additional facts material to a determination on FECA coverage in this matter exist.

I declare under the penalty of perjury that the foregoing is true and correct.  Executed on October 7, 2005.  28 U.S.C. § 1746.

EDWARD G. DUNCAN
Deputy Director for Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

2

October 7, 2005

MEMORANDUM FOR:     Beverly M. Russell, Esq.
Assistant United States Attorney

FROM:     Edward G. Duncan
Deputy Director for Federal Employees' Compensation

SUBJECT:     *John Sullivan v. United States, et al.*
Civil Action No. 1:05CV01418 (D DC)

This is in response to your request for an opinion whether John Sullivan, the plaintiff in the above-entitled matter, would be covered under the Federal Employees' Compensation Act (FECA) for injuries sustained in a July 23, 2003 incident near the Cannon House Office Building in Washington, D.C. involving the alleged failure of Capitol Police officers to safely manipulate the security barrier, thereby causing serious injury to Mr. Sullivan's left eye. The opinion expressed herein is based upon the facts alleged in the complaint filed in the above-referenced action, a copy of which I have been provided and have reviewed. Actual adjudication of a claim presented pursuant to the FECA for compensation for any medical, physical, or emotional conditions based upon the events set forth in the complaint may disclose different or additional facts that substantially affect the ultimate determination of this matter.

Upon review of the allegations of the complaint, I conclude that there is a significant possibility that the Mr. Sullivan's left eye injury (as well as any other medical, physical, or emotional conditions causally related to the July 23, 2003 incident described in the complaint) may be covered under the FECA. The complaint alleges that on Wednesday, July 23, 2003, Mr. Sullivan, the Congressman from the First District of Oklahoma, was a passenger in a vehicle driven by Elizabeth Bartheld, and that he was "returning from a speech given to a private group in Georgetown, Washington, D.C." Complaint, p. 3, ¶ 12. The complaint also notes that Mr. Sullivan maintains a business address at 114 Cannon House Office Building, Washington, D.C. 20515. Complaint, p. 2, ¶ 1. The complaint alleges that the driver of the vehicle "was traveling at a safe rate of speed and obeying all signs and signals"; that the driver was seeking to park before returning to work activities; that all three passengers presented satisfactory identification at the security stop; that Officer S. Humphrey "motioned by hand to Ms. Bartheld to proceed through the barrier"; and that the security barrier was lowered and the light indicating that she could proceed through the checkpoint was marked. Complaint, p. 3, ¶¶ 13-15.

The complaint further alleges that Officer R. Moore "was stationed in the South Kiosk and was exclusively responsible for raising and lowering the security barrier"; that Officer S. Humphrey "motioned to Officer R. Moore while Ms. Bartheld's vehicle was approaching the second barrier"; that Ms. Bartheld was paying full attention, traveling at a safe rate of speed, and observing all signs and instructions; that "Officer S. Humphrey improperly used a hand signal to

Attachment A

inform Officer R. Moore, who was on a cell phone not paying full time and attention to his duties and responsibilities, to keep the security barrier lowered while the vehicle proceeded through the second barrier"; and that "When the vehicle lawfully and safely approached the security barrier, Officer R. Moore, who was on a cell phone or otherwise not paying full time and attention, improperly and with gross negligence raised the security barrier which struck the front bumper and undercarriage of the vehicle." Complaint, p. 4, ¶¶ 16-18. The complaint further alleges that because of the "force by which the barrier was raised and collided with the vehicle, the airbags inside the vehicle were deployed," and that "Mr. Sullivan suffered serious injury to his left eye directly and proximately caused by the raising of the security barrier." Complaint, p. 4, ¶ 20. In addition, the complaint alleges that Mr. Sullivan was taken to the George Washington University Medical Center Emergency Room, where he received emergency treatment; that he "has suffered multiple injuries as a direct and proximate result of Officer R. Moore's and Officer S. Humphrey's gross negligence"; that he "has suffered permanent and disabling injuries which have caused him pain, suffering and resulting damages"; and that his "injuries sustained as a result of the gross negligence caused by Defendants prevent him from pursuing certain ordinary activities; have affected him medically; and have caused pain, suffering and economic loss to Plaintiff." Complaint, pp. 4-5, ¶¶ 21-23.

Plaintiff contends that he has suffered damages, injury, pain and suffering, and economic damages as a result of the actions of officers Moore and Humphrey, and that "[b]ut for the negligence of the officers, the security barrier would not and could not have been raised under the vehicle, the air bags would not have deployed, and the injuries to Mr. Sullivan's eye would not have occurred." Complaint, pp. 6-7, ¶¶ 28, 30, 35. Presuming that plaintiff submits medical evidence sufficient to establish such a claim, there is a significant possibility that the injuries to Mr. Sullivan's left eye, and any consequential injury resulting from such injuries, would be covered under the FECA.

Based on the above discussion and the allegations of the complaint, it appears that plaintiff John Sullivan was an official elected to the House of Representatives, representing the First Congressional District in Oklahoma. While he was a passenger in a vehicle driven by a member of his staff on July 23, 2003, plaintiff Sullivan allegedly sustained serious injuries to his left eye when a security barrier near the Cannon House Office Building was raised, striking the vehicle in which he was riding with sufficient force that the air bags deployed. Under these circumstances, there is a significant possibility that the injuries to plaintiff's left eye would be covered under the FECA because Mr. Sullivan was an employee within the meaning of 5 U.S.C. § 8101 who sustained an injury in the performance of duty within the meaning of 5 U.S.C. § 8102.

Under the FECA, federal employees are entitled to compensation "for the disability or death of an employee resulting from personal injury sustained in the performance of duty." 5 U.S.C. § 8102(a). The phrase "while in the performance of duty" in the FECA has been construed by the Employees' Compensation Appeals Board (ECAB) as consistent with the phrase "arising out of and in the course of employment" commonly found in workers'

compensation law. *Mark C. Holst*, 39 ECAB 496 (1988). "In the course of employment" deals essentially with the work setting, the locale and the time of the injury, whereas "arising out of the employment" encompasses not only the work setting but also a causal concept, the requirement being that an employment factor caused the injury. *Denis F. Rafferty*, 16 ECAB 413 (1965). With respect to the "course of employment," the ECAB has accepted the general rule of workers' compensation law that, as to employees having fixed hours and places of work, injuries occurring on the premises of the employing establishment, while the employees are going to or from work, before or after working hours, or at lunch time, are compensable. *Emma Varnerin*, 14 ECAB 253 (1963). The ECAB has also held that the "course of employment" for employees having a fixed time and place of work embraces a reasonable interval before official working hours while the employee is on the premises engaged in preparatory or incidental acts. *Clayton Varner*, 37 ECAB 248 (1985). In sum, an injury occurring on the premises during working hours is compensable unless the injury is established to be within an exception to the general rule. *See Chris Wells*, 52 ECAB 445 (2001).

Section 8101(1)(A) of the FECA (5 U.S.C. § 8101(1)(A)) provides that employee means "a civil officer or employee in any branch of the Government of the United States, including an officer or employee of an instrumentality wholly owned by the United States." Elected officials in the legislative branch of the United States Government have regularly been afforded coverage under the FECA for injuries they have sustained in the performance of the duties of the positions to which they have been elected. See, for example, FECA Program Memorandum No. 213, issued October 28, 1976, which concluded that elected officials of the District of Columbia Council are covered by the provisions of the FECA.

With regard to the circumstances of the July 23, 2003 injury, the complaint alleges that Mr. Sullivan was a passenger in a vehicle driven by an employee of his office, and that they were returning to the office in the Cannon House Office Building from a speech given to a private group in Georgetown, Washington, D.C. The injury occurred when the second security barrier unexpectedly rose, striking the vehicle with sufficient force that the vehicle's air bags were deployed. Based on the description in the complaint, it appears that Mr. Sullivan was on a special mission, and was returning the office in the middle of the work day from a work event off the premises of the Capitol grounds. Because Mr. Sullivan's special mission was necessitated by his work, the special mission would be considered a part of the employment, and Mr. Sullivan would be considered in the performance of duty at the time of his July 23, 2003 injury. *Gary L. Fowler*, 45 ECAB 365, 371 (1994).

A separate and independent ground for coverage of Mr. Sullivan's injury under the FECA would be the "premises" exception to the usual rule that injuries sustained by employees on the way to or from work, or to or from lunch, are not covered. As noted above, for employees having fixed hours and places of work, injuries occurring on the premises of the employing establishment, while the employees are going to or from work, before or after working hours, or at lunch time, are compensable. *Emma Varnerin, supra.* Under the premises rule, any injury occurring on the premises of the Capitol grounds during a trip to or from work, or at lunch time, would be

3

compensable under the FECA. Although, as noted above, coverage under the FECA is possible on the theory that Mr. Sullivan was on a special mission at the time of the incident, it is also possible that the July 23, 2003 injury could be covered under the FECA based on a finding that the injury took place within the premises of the employing establishment.[1]

Based on the foregoing discussion, and absent some contradictory information which has not been provided to me, I conclude that there is a significant possibility that a claim by plaintiff John Sullivan for compensation for physical injuries, and any consequential medical, physical, or emotional conditions, resulting from the improper operation of the security barrier on July 23, 2003 would be covered under the FECA.[2]

---

[1]    The "premises" of the employer, as that term is used in workers' compensation law, are not necessarily coterminous with the property owned by the employer; they may be broader or narrower and are dependent more on the relationship of the property to the employment than on the status or extent of the legal title. *Michael J. Licata*, 33 ECAB 652 (1982); *Wilmar Lewis Prescott*, 22 ECAB 318 (1971).

The ECAB has held that it "is a general rule of workers' compensation law that, as to employees having fixed hours and place of work, injuries occurring on the premises of the employing establishment, while the employees are going to or from work, before or after working hours, or at lunch time are compensable." *Annette Stonework*, 35 ECAB 306, 308 (1983). The ECAB has also declared that the term "premises" is not synonymous with "property." The former does not depend on ownership, nor is it necessarily coextensive with the latter. In some cases "premises" may include all the "property" owned by the employer; in other cases even though the employer does not have ownership and control of the place where the injury occurred, the place is nevertheless considered part of the "premises." *Raymond F. Brennan*, 14 ECAB 249 (1963); *Alvina B. Pillar*, 7 ECAB 444 (1955).

In *Prescott, supra*, the ECAB found that Mr. Prescott's injury was compensable under the FECA because it occurred on the premises of the employing agency's installation, which was owned by the Department of the Navy, but was operated as an ordnance plant by General Dynamics Corporation under a contract with the Navy. Mr. Prescott's injury occurred on a driveway between an employing agency parking lot and a public highway. The ECAB reversed the decision of the predecessor agency to the OWCP, finding that the injury was covered because it occurred on the premises of the employing agency. The Office has applied the premises rule in analogous circumstances involving injuries on property controlled by an employing agency. *Annette Stonework*, 36 ECAB 306 (1983); *Emma Varnerin, M.D.*, 14 ECAB 253 (1963).

[2]    Section 8122(a) of the FECA (5 U.S.C. § 8122(a)) provides that "[a]n original claim for compensation for disability or death must be filed within 3 years after the injury or death." Pursuant to this provision, any claim for compensation for any injuries sustained by John Sullivan as a result of the events of July 23, 2003 filed on or before July 23, 2006 would be considered a timely claim.

4