# EXHIBIT A

# Westlaw.

210 F.Supp.2d 1120

Page 1

210 F.Supp.2d 1120

**(Cite as: 210 F.Supp.2d 1120)**

H

**Motions, Pleadings and Filings**

United States District Court,
N.D. California.
Wayne A. RITCHIE, Plaintiff,
v.
UNITED STATES of America, Defendant.
**No. C 00-03940 MHP.**

July 1, 2002.

Former federal employee filed action under Federal Tort Claims Act (FTCA) alleging that Central Intelligence Agency (CIA) and Bureau of Narcotics tested psychoactive drugs on him without his knowledge or consent. On government's motion to dismiss, the District Court, Patel, Chief Judge, held that: (1) Federal Employees' Compensation Act (FECA) did not bar suit; (2) employee's claims were not barred by FTCA's intentional tort exception; and (3) fact issues remained as to whether employee exercised due diligence in discovering his claims.

Motion granted.

West Headnotes

**[1] Workers' Compensation ☞2085**
413k2085 Most Cited Cases
If federal employee is injured in course of his employment, Federal Employees' Compensation Act (FECA) precludes federal district court from exercising subject matter jurisdiction over any claim brought under Federal Tort Claims Act (FTCA). 5 U.S.C.A. § 8116; 28 U.S.C.A. § 2671 et seq.

**[2] United States ☞127(2)**
393k127(2) Most Cited Cases
If there is substantial question about Federal Employees' Compensation Act (FECA) coverage, injured employee may not commence tort action against United States under Federal Tort Claims Act (FTCA) before exhausting FECA's administrative remedies. 5 U.S.C.A. § 8116; 28 U.S.C.A. § 2671 et seq.

**[3] United States ☞127(2)**
393k127(2) Most Cited Cases
Injuries sustained by Deputy United States Marshal as result of his alleged involuntary ingestion of lysergic acid diethylamide (LSD) or another psychoactive drug while attending holiday party in United States Post Office Building as part of experiment by Central Intelligence Agency (CIA) did not relate to special zone of danger created by obligation or condition of employment, and thus he was not required to file claim with Secretary of Labor pursuant to Federal Employees' Compensation Act (FECA) before initiating action against United States under Federal Tort Claims Act (FTCA). 5 U.S.C.A. § 8116; 28 U.S.C.A. § 2671 et seq.

**[4] United States ☞78(5.1)**
393k78(5.1) Most Cited Cases
Although Federal Tort Claims Act (FTCA) excepts subset of intentional torts, these exceptions should be strictly construed. 28 U.S.C.A. § 2680(b).

**[5] United States ☞78(8)**
393k78(8) Most Cited Cases
Plaintiff may bring claim under Federal Tort Claims Act (FTCA) for negligent supervision, notwithstanding fact that other components of act involve intentional tort. 28 U.S.C.A. § 2680(h).

**[6] United States ☞78(5.1)**
393k78(5.1) Most Cited Cases

**[6] United States ☞78(9)**
393k78(9) Most Cited Cases
Former Deputy United States Marshal's claims

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120                                                                                                        Page 2

210 F.Supp.2d 1120

**(Cite as: 210 F.Supp.2d 1120)**

against United States for negligent supervision, invasion of privacy, and intentional infliction of emotional distress, arising out of his alleged involuntary ingestion of lysergic acid diethylamide (LSD) or another psychoactive drug as part of experiment by Central Intelligence Agency (CIA), were not barred by intentional tort exception to Federal Tort Claims Act (FTCA), even if CIA agent's act of administering LSD constituted battery. 28 U.S.C.A. § 2680(h).

**[7] Limitation of Actions ⇐95(1)**
241k95(1) Most Cited Cases
Plaintiff need not know identity of person who caused his injury to trigger statute of limitations.

**[8] Federal Civil Procedure ⇐2515**
170Ak2515 Most Cited Cases
Genuine issue of material fact as to whether former Deputy United States Marshal exercised due diligence in discovering that his psychological problems were related to his alleged involuntary ingestion of lysergic acid diethylamide (LSD) or another psychoactive drug as part of experiment by Central Intelligence Agency (CIA) precluded summary judgment on limitations grounds in marshal's suit against United States under Federal Tort Claims Act (FTCA). 28 U.S.C.A. § 2401(b).
*1121 Robert W. Cartwright, Kent L. Klaudt, Cartwright & Alexander, LLP, San Francisco, CA, Sidney Bender, Risa Bender, Leventritt, Lewittes & Bender, New York City, for Plaintiff.

Robert S. Mueller, III, U.S. Attorney's Office, Criminal Division, San Francisco, CA, Jocelyn Burton, U.S. Attorney's Office, Oakland, CA, Patricia J. Kenney, U.S. Attorney's Office, San Francisco, CA, for Defendants.

*MEMORANDUM & ORDER*

PATEL, Chief Judge.

Plaintiff Wayne A. Ritchie initially filed this action against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"), and against Robert V. Lashbrook and Ike Feldman under the First, Fourth, Fifth and Eighth Amendments to the United States Constitution. Plaintiff alleges that the Central Intelligence Agency and the Bureau of Narcotics tested psychoactive drugs on unknowing and unwitting American citizens including plaintiff during the 1950s. Plaintiff seeks twelve-million dollars in compensatory damages as well as costs and attorneys' fees.

The court previously dismissed plaintiff's constitutional claims. The United States now moves to dismiss plaintiff's remaining claims for lack of subject matter jurisdiction. Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

*BACKGROUND*

As explained in this court's July 12, 2001 Memorandum and Order, plaintiff, a former Deputy United States Marshal, alleges that he was unwittingly given food or drinks that were laced with lysergic acid diethylamide (LSD) or another psychoactive drug while attending a holiday party in the United States Post Office Building on December 20, 1957. Compl. ¶ 12. Following this intoxication, and after visiting several bars, plaintiff initiated an armed robbery. Compl. ¶ 15. Plaintiff was then taken into police custody where he wrote a letter of resignation. Compl. ¶¶ 15 & 17.

Plaintiff alleges that he was a victim of a national federal program called "MKULTRA" for the research and development of drugs to alter human behavior. Compl. ¶¶ 18 & 26. Plaintiff maintains that he "first suspected that he might have been surreptitiously drugged" when he read Dr. Stanley Gottlieb's obituary in the newspaper on March 15, 1999. Compl. ¶ 23. He found additional support for his suspicion in April 1999 when he read a diary entry of George White, an agent of the Bureau of Narcotics and allegedly the operating head of the CIA's "mind-altering program" in San Francisco. *See* Compl. ¶ 24; Ritchie Dep., Exh. B-12 (White was a senior employee at the San Francisco Federal Narcotics

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120                                                                                                          Page 3

210 F.Supp.2d 1120

**(Cite as: 210 F.Supp.2d 1120)**

Bureau in the 1950s). White's December 20, 1957 diary entry stated, in *1122 part, "xmas party Fed bldg Press Room." Ritchie Dep., Exh. D; Compl. ¶ 25. [FN1] White was an MKULTRA subcontractor from approximately 1953 until 1964. McGinn Dec. ¶ 5. In that role, he established a safehouse apartment in San Francisco where drug tests were conducted on drug informants and prostitutes. *Id.*

> FN1. The full entry reads: "home sick. xmas party Fed bldg Press Room." Ritchie Dep., Exh. D.

Defendant has produced an extensive record of newspaper and television coverage documenting federal mind-control experimentation. *Id.*, Exhs. A-C (newspaper articles) & X (books). Plaintiff denies having seen most of these exhibits before 1999. Ritchie Dep. 170-71; Ritchie Dec. (April 30, 2002) ¶¶ 3 & 4. He does, however, indicate that he read an article about the government's research in 1977. Ritchie Dep. at 22-23, 26, 197-210, 283-84. This article reports that it was a customary practice of the research project to examine the effects of involuntary drug exposure on prostitutes. *See id.* Exh. B-12. Notably, the article does not mention LSD. *Id.*

Plaintiff filed a Notice of Claim with the Central Intelligence Agency ("CIA") and the Drug Enforcement Agency ("DEA") on October 22, 1999 as required by the Federal Tort Claims Act ("FTCA"). Those claims were denied on April 26, 2000. He filed a complaint with this court on October 25, 2000. Defendants answered the complaint on March 2, 2001. Plaintiff does not appear to have filed a claim with the Secretary of Labor as required by the Federal Employment Compensation Act ("FECA").

On July 12, 2001, the court granted defendants' motion to dismiss plaintiff's constitutional claims for failure to satisfy California's one-year statute of limitations for personal injury actions. The court denied defendants' motion to dismiss plaintiff's FTCA claims, finding that the record did not indicate that these claims were similarly time-barred.

The United States filed a second motion to dismiss or, in the alternative, for summary judgment on March 20, 2002. This motion challenges plaintiff's claims on four grounds. First, defendant contends that plaintiff's FTCA claims are barred by FECA. In the alternative, defendant maintains that plaintiff's claims are excluded from the FTCA because they contemplate intentional acts. Third, defendant argues that plaintiff's FTCA claims are time-barred. Finally, defendant contends that plaintiff's FTCA claims are barred by laches. The court addresses each in turn.

*LEGAL STANDARD*

I. *Federal Rule of Civil Procedure Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979).

In considering a motion to dismiss for lack of subject matter jurisdiction, the court must accept all of plaintiff's factual allegations as true. *See Dreier v. United States,* 106 F.3d 844, 847 (9th Cir.1996). Unlike a 12(b)(6) motion, however, the court may assess the complaint's jurisdictional allegations by relying on affidavits or any other evidence properly before the court. *Id.; see also Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) ("[W]hen a question of the *1123 District Court's jurisdiction is raised ... the court may inquire, by affidavits or otherwise, into the facts as they exist."). All disputes are resolved in favor of the non-moving party. *See Dreier,* 106 F.3d at 847.

II. *Motion for Summary Judgment*

Defendant contends that plaintiff filed his complaint beyond the FTCA's time limitation and should therefore be dismissed. Where the facts and dates alleged in a complaint demonstrate that the complaint is barred by the statute of limitations, a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120

Page 4

210 F.Supp.2d 1120

**(Cite as: 210 F.Supp.2d 1120)**

Federal Rule of Civil Procedure 12(b)(6) motion should be granted. *See* Fed.R.Civ.P. 12(b)(6); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980). However, where the relevant dates are not evident in the complaint, the court may consult evidence outside the complaint, converting a motion to dismiss to a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6) ("if ... matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."); *see also Grove v. Mead Sch. Dist. No. 354,* 753 F.2d 1528, 1532-33 (9th Cir.); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1366.

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court may not make credibility determinations, *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987).

*DISCUSSION*

I. *FECA Exclusivity*

Defendant argues that the exclusivity provision of the Federal Employees' Compensation Act ("FECA") bars plaintiff from bringing a claim under the Federal Tort Claims Act ("FTCA"). 5 U.S.C. § 8116.

FECA, 5 U.S.C. §§ 8101-8193, provides an efficient remedy for federal employees who are injured in the course of their employment. *See Reep v. United States,* 557 F.2d 204, 207 (9th Cir.1977) (FECA intended to provide a "quicker and more certain recovery than could be obtained from tort suits based on common law theories."). Where applicable, employees bring a claim to the Secretary of Labor, in lieu of a common law claim in federal court. Where the Secretary determines that the employee sustained an injury in the performance of his duty, the employee is awarded immediate, fixed benefits, regardless of fault. The Secretary's determination is final and may not be reviewed by a federal court. 5 U.S.C. § 8128(b).

[1][2] FECA provides the exclusive remedy for an injury within its coverage. 5 U.S.C. § 8116(c). Thus, if a federal employee is injured in the course of his employment, the court lacks subject matter jurisdiction over any claim brought under the FTCA. *See Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 90, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991); *United States v. Demko,* 385 U.S. 149, 151, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). If there is a substantial question about FECA coverage, an *1124 injured employee may not commence a tort action against the United States before exhausting FECA's administrative remedies. *See David v. United States,* 820 F.2d 1038, 1043-44 (9th Cir.1987).

[3] Defendant urges the court to dismiss this action, contending that there is a substantial question about FECA coverage. A substantial question exists unless it is certain that the Secretary would deny coverage under the Act. *Bruni v. United States,* 964 F.2d 76, 79 (1st Cir.1992); *DiPippa v. United States,* 687 F.2d 14, 16 (3d Cir.1982); *White v. United States,* 143 F.3d 232, 234 (5th Cir.1998). Because the court concludes plaintiff's injuries were not sustained while in the performance of his duty as a federal employee, it need not defer to the Secretary. [FN2]

> FN2. Plaintiff challenges FECA's applicability, highlighting the act's intoxication exclusion. *See* 5 U.S.C. § 8102(a)(3) (excluding claims for any

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120                                                                                         Page 5
210 F.Supp.2d 1120
**(Cite as: 210 F.Supp.2d 1120)**

injury that is "proximately caused by the intoxication of the injured employee"). Plaintiff's reliance on section 8102(a)(3) is mistaken. This exclusion is intended to bar coverage for injuries "arising out of an employee's misconduct." *In re Elizabeth Hallaran*, 43 ECAB 391, 394 (1992). To this end, the Act excludes voluntary intoxication. *Id.* (excepting employee's intentional inhalation of chloroform). Plaintiff alleges that he was intoxicated by the involuntary ingestion of LSD. Barring FECA coverage for his claims would turn the statute on its head. *See In the Matter of Charles G Williams*, 35 ECAB 614 (upholding FECA coverage for unwitting lead intoxication); *In the Matter of Lonnie Lee Whisenhunt*, 32 ECAB 1892 (1981) (upholding FECA coverage for unwitting intoxication from manganese fumes released during welding). Nonetheless, the court need not defer to the Secretary of Labor because plaintiff's injuries were not incurred in the performance of his duties as a Deputy United States Marshal.

FECA provides coverage for a plaintiff's injuries incurred "in the performance of his duties." 5 U.S.C. § 8102(a). A plaintiff's injuries arise in the performance of his duties if related to the special zone of danger created by an obligation or condition of employment. *See, e.g., O'Leary v. Brown-Pacific-Maxon*, 340 U.S. 504, 506-7, 71 S.Ct. 470, 95 L.Ed. 483 (1951); *Bruni*, 964 F.2d at 79; *Wright v. United States*, 717 F.2d 254 (6th Cir.1983); *Wallace v. United States*, 669 F.2d 947, 952 (4th Cir.1982); *Avasthi v. United States*, 608 F.2d 1059, 1061 (5th Cir.1979). [FN3] To make this determination, the court must consider "whether under all the circumstances, a causal relationship exists between the employment itself, or the conditions under which it is to be performed, and the resultant injury." *Wallace*, 669 F.2d at 953 (quoting *In re Estelle M. Krasprzak*, 27 ECAB 339, 342 (1979)); *Leo Boyd Purrinson & U.S. Post Office*, 30 ECAB 644 (1979) (requiring causal relationship between the employment and resultant injury); *see also Bruni*, 964 F.2d at 79 (considering

"the totality of the circumstances surrounding [the injury]"); *White*, 143 F.3d at 235 (requiring consideration of "all relevant factors").

> FN3. Although *O'Leary* considered the applicability of the Longshoreman's and Harbor Worker's Compensation Act, the analysis is the same under FECA. *See Bailey v. United States*, 451 F.2d 963, 967 (5th Cir.1971); *Wallace v. United States*, 669 F.2d 947, 952 n. 4 (4th Cir.1982).

Defendant states simply that "plaintiff was injured while performing his duties." [FN4] Def.'s Mot. at 11. Absent further explanation, the court assumes this conclusion is *1125 based on the fact that plaintiff was a federal employee injured on government property during working hours. None of these factors is dispositive. *See Wright*, 717 F.2d 254 (no FECA coverage, notwithstanding fact that plaintiff was a federal employee injured during working hours); *White*, 143 F.3d at 235 ("[L]ocation of the accident is only one of the factors to be considered in determining whether a substantial question of coverage exists."); *Wallace*, 669 F.2d at 952 ("The mere fact that the injury occurred while the employee was on the premises of his federal employer is not controlling"; no FECA coverage although injury occurred during business hours) (citation omitted); *Avasthi*, 608 F.2d at 1061 ("[P]remises rule is but one factor in determining whether an injury is compensable.").

> FN4. Defendant's statement is conclusory. Defendant does nothing more than provide a history of FECA and emphasize the deference afforded the Secretary of Labor. Def.'s Mot. at 10-11. Defendant utterly fails to explain how plaintiff's injury was within the zone of danger of his employment. Contrary to defendant's suggestion, the FECA exclusivity provision by no means applies to every claim brought by a federal employee. Because defendant failed to support its conclusion, the court is left to divine defendant's faulty reasoning on its own.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120                                                                                                    Page 6

210 F.Supp.2d 1120

**(Cite as: 210 F.Supp.2d 1120)**

At oral argument, defendant offered a novel theory supporting FECA coverage of plaintiff's injuries. Apparently, plaintiff has suggested that George White placed LSD in his food or drink to avenge a fight with plaintiff's supervisor. By this theory, plaintiff was injured *because* he was a Deputy United States Marshal. The injury was thus within the zone of danger of his employment. The court rejects this argument as mere conjecture.

Given the national scope of defendant's activities, the court is hard-pressed to find that plaintiff's injury was "causally related" to his employment. *See Wallace*, 669 F.2d at 952 (denying FECA coverage to a federal employee who had an adverse reaction to a vaccine administered as part of a national flu inoculation program). MKULTRA was a national program. *See CIA v. Sims*, 471 U.S. 159, 162, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985) (noting that the CIA "financed a wide-ranging project ... consist[ing] of some 149 subprojects" requiring the participation of "[a]t least 80 institutions and 185 private researchers"); *see also Kronisch v. United States*, 150 F.3d 112, 117 (2d Cir.1998) (describing "substantial programs for the testing and use of chemical and biological agents ... [on] unwitting nonvolunteer subjects at all social levels, high and low, native American and foreign"). In fact, defendant has amply demonstrated the prevalence of the CIA's mind-control experimentation. *See, e.g.*, Ritchie Dep., Exhs. A-C & X; Def.'s Reply at 12 (documenting an "overwhelming amount of information about CIA testing with mind control drugs"). That plaintiff's alleged injuries occurred on federal property was fortuitous; he could just as easily have been injured elsewhere. *See Kronisch*, 150 F.3d at 118 (MKULTRA involved the "surreptitious administration [of LSD] to unwitting nonvolunteer subjects in normal life settings") (quoting Senate committee report); *CIA v. Sims*, 471 U.S. at 162 n. 2, 105 S.Ct. 1881. (same).

Moreover, the totality of the circumstances indicate that plaintiff's injury did not occur in the course of his employment. Plaintiff alleges that he was unwittingly drugged by the federal government at a holiday party on federal property during business hours. Plaintiff could not have contemplated the alleged injury when he accepted federal employment. *See Wright*, 717 F.2d at 258 ("negligent application and use of a respirator is not an expected consequence of being within the special zone of danger which surrounds secretarial positions at Veterans Administration hospitals"); *see also Wallace*, 669 F.2d at 954 (compensation unavailable under FECA when the injury had nothing to do with employment). [FN5] To find these fantastic *1126 injuries occurred in the performance of plaintiff's duties stretches the zone of danger beyond its limits. Accordingly, the court finds that plaintiff's injury did not arise in the performance of his duties.

> FN5. While the court doubts that the drugging of an employee by the CIA would be within the zone of danger of employment in any event, it is even less likely that such activity would be covered when it occurred during a holiday party. The court was unable to find a single ECAB decision finding coverage for injuries incurred at a holiday party. The only case cited by defendant for this proposition denied FECA coverage, but suggested in dicta that compensation would have been possible if plaintiff's injuries had occurred at a party organized by the employment establishment while on temporary service duty abroad. *Janice K. Matsumura*, 38 ECAB 262, 266 (1986).

The court's determination is unaffected by Deputy Director Edward G. Duncan's contrary conclusion. *See* Duncan Dec. (Mar. 4, 2002); Duncan Supp. Dec. (May 17, 2002). Admittedly, the court may consider a declaration on a 12(b)(1) motion to dismiss. [FN6] *See Rosales v. United States*, 824 F.2d 799 (9th Cir.1987) ("A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined with the merits.") (citations omitted); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983) ( "In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120

Page 7

210 F.Supp.2d 1120

**(Cite as: 210 F.Supp.2d 1120)**

hear evidence regarding jurisdiction and to rule on that issue prior to trial"). Nonetheless, the court strikes the declaration. It is not a formal policy interpretation of a regulation, but merely a self-serving declaration prepared for this litigation. *See Hines v. United States,* 60 F.3d 1442, 1450 n. 8 (9th Cir.1995) ("Eng's declaration is, of course, self-serving because it was given after the accident and in light of the current lawsuit"); *United States v. Trident Seafoods Corp.,* 60 F.3d 556, 559 (9th Cir.1995) ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."). Moreover, as discussed above, Duncan's conclusion "fl[ies] in the face of simple logic and relevant judicial precedent." *Wallace,* 669 F.2d at 954 (declining to follow the government's statutory interpretation); *see also Hines* 60 F.3d at 1450 (disregarding a declaration because its "interpretation of the regulation is manifestly unreasonable and deserves no controlling weight.").

> FN6. Plaintiff's reliance on *Buehler v. United States,* 1996 WL 511645, *2 n. 2 (N.D.Cal.1996), is misplaced. That action involved a motion to dismiss for failure to state a claim, rather than a motion to dismiss for lack of subject matter jurisdiction.

Because the court concludes that the facts of this action do not support FECA coverage, it need not consider scope of coverage. Thus, at least at this stage, the court need not decide whether plaintiff's alleged emotional and physical injuries are interconnected. *See Sheehan v. United States,* 896 F.2d 1168 (9th Cir.1990) (no FECA coverage when emotional injury divorced from physical harm); *Figueroa v. United States,* 7 F.3d 1405, 1408 (9th Cir.1993) (finding possible FECA coverage where plaintiffs' emotional damages were "tied to physical harm").

In sum, the court holds that plaintiff's injuries did not arise out of the special zone of danger created by an obligation or condition of his employment. There simply is not a substantial question of FECA coverage. Therefore, the court has jurisdiction to entertain plaintiff's FTCA claims.

II. *28 U.S.C. § 2680(h)*

Defendant contends that plaintiff's claims are barred by the FTCA, 28 U.S.C. § 2680(h), which bars coverage for a subset of intentional torts. The complaint seeks damages under the FTCA for negligent supervision, Compl. ¶ 37, invasion of *1127 privacy, Compl. ¶ 39, and intentional infliction of emotional distress, Compl. ¶ 41. Defendant contends each claim arises from the alleged battery of plaintiff when he was purportedly given LSD by the government. Battery was expressly excepted from the FTCA in 1957.

Contrary to defendant's suggestion, Def.'s mot. at 11, not all intentional torts are excepted from the FTCA. For instance, the Ninth Circuit has expressly recognized that "intentional infliction of emotional distress is not excluded as a matter of law from FTCA by § 2680(h)." *Sheehan,* 896 F.2d at 1172.

[4][5] Although the FTCA excepts a subset of intentional torts, these exceptions should be strictly construed. *Id.* at 1170 ("[t]here is no justification for this Court [or any court] to read exemptions into the [Federal Tort Claims] Act beyond those provided by Congress.") (quoting *Rayonier Inc. v. United States,* 352 U.S. 315, 320, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957)). While one aspect of the government's conduct may be excluded from the FTCA, other aspects of that conduct are actionable. *Id.* at 1171 ("If ... the aspect of the conduct upon which plaintiff relies did not constitute an assault, suit is not barred even though another aspect of that conduct may have been assaultive."). Plaintiff may bring a claim for negligent supervision, notwithstanding the fact that other components of the act involve an intentional tort. *Id.*

In fact, FTCA claims for negligent supervision often accompany intentional torts. *See, e.g., Brock v. United States,* 64 F.3d 1421 (9th Cir.1995) (alleging negligent supervision leading to employee's rape); *Bruni,* 964 F.2d 76 (1st Cir.1992) (alleging negligent supervision in employee's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120

210 F.Supp.2d 1120

**(Cite as: 210 F.Supp.2d 1120)**

Page 8

shooting). The "assault and battery exception [in section 2680(h)] does not immunize the Government from liability for negligently hiring and supervising an employee." *Brock*, 64 F.3d at 1425.

Notably, MKULTRA complaints traditionally sound in negligence. *Kronisch v. United States*, 150 F.3d 112, 120 (2d Cir.1998) (suit brought under FTCA alleging negligence, invasion of privacy and intentional infliction of emotional distress); *Orlikow v. United States*, 682 F.Supp. 77 (D.D.C.1988) (FTCA action alleging negligent failure of supervision and control over CIA employees and negligent funding of hazardous experiments); *Glickman v. United States*, 626 F.Supp. 171 (S.D.N.Y.1985) (FTCA action alleging negligence, invasion of privacy and intentional infliction of emotional distress); *Scott v. Casey*, 562 F.Supp. 475 (N.D.Ga.1983) (challenging MKULTRA under the FTCA); *see also Barrett v. United States*, 689 F.2d 324 (2d. Cir.1982) (FTCA action alleging negligence in creation and administration of army chemical warfare experiment involving intentional injection of a mescaline derivative). As the district court recognized in *Orlikow v. United States*, 682 F.Supp. at 82, "selecting incompetent contractors or employees and supervising them in a careless manner are acts of negligence pure and simple."

[6] Defendant's argument is not new. In *Glickman*, the government likewise challenged plaintiff's claims for impermissibly arising from battery. *Glickman*, 626 F.Supp. at 174 (referring to alleged inadequacy of administrative claim). The court dismissed the criticism, finding the complaint contemplated a "covert CIA plan to infringe the rights of citizens" and various other legal theories. *Id*. The tenuous connection to an intentional tort was not determinative. The negligence claims remained on appeal. *Kronisch*, 150 F.3d 112 (action by Glickman's executrix). The FTCA claims in *Glickman* were nearly identical to those in this action. *See* Bender *1128 Dec. (Apr. 20, 2002) ¶ 3. [FN7] This court likewise declines to dismiss plaintiff's complaint.

FN7. The Second Circuit ultimately dismissed these claims for failure to satisfy the statute of limitations, not for violation of section 2680(h). *See also Scott*, 562 F.Supp. 475 (N.D.Ga.1983) (dismissing negligence claims as time-barred).

III. *Statute of Limitations*

Defendant contends that plaintiff's FTCA claims are time-barred. "[W]here the issue of limitations involves determinations [of when a claim begins to accrue], summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue." *Lundy v. Union Carbide Corp.*, 695 F.2d 394, 397-98 (9th Cir.1982) (quoting *Williams v. Borden, Inc.*, 637 F.2d 731, 738 (10th Cir.1980)). Defendant has not met this burden. Summary judgment must be denied.

The FTCA provides that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues" *See* 28 U.S.C. § 2401(b); *see also Bartleson v. United States*, 96 F.3d 1270, 1276 (9th Cir.1996). Plaintiff filed his administrative claim with the CIA and the DEA on October 22, 1999. Accordingly, plaintiff's FTCA claim against the government is untimely if it accrued prior to October 22, 1997.

Although a tort claim generally accrues at the time of injury, *Davis v. United States*, 642 F.2d 328, 330 (9th Cir.1981), courts have applied a more liberal standard where the government conceals the acts giving rise to the claim or where plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted. *See Kronisch*, 150 F.3d 112, 121 (2d Cir.1998). In such cases, "the claim does not accrue until the plaintiff knows or in the exercise of reasonable diligence should know of both the injury and its cause." *Dyniewicz v. United States*, 742 F.2d 484, 486 (9th Cir.1984); *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (cause of action did not accrue until plaintiff discovered both the existence of his injury and its cause). [FN8] It is undisputed that the government did not tell plaintiff he was a victim of MKULTRA

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120                                                                                                  Page 9

210 F.Supp.2d 1120

**(Cite as: 210 F.Supp.2d 1120)**

at the time of his injury. To the contrary, the government destroyed MKULTRA documents in the 1970s. *CIA v. Sims,* 471 U.S. 159, 163 n. 5, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985) ("Twenty years after the conception of the MKULTRA project, all known files pertaining to MKULTRA were ordered destroyed."); *Kronisch v. United States,* 150 F.3d 112, 116 (2d Cir.1998) (same). In light of this concealment, the diligence-discovery rule is clearly applicable.

> FN8. Contrary to defendant's suggestion, the diligence-discovery rule is not restricted to medical malpractice. *See, e.g., Dyniewicz v. United States,* 742 F.2d 484 (9th Cir.1984) (flooding of federal road); *Barrett v. United States,* 689 F.2d 324, 327 (2d Cir.1982) (diligence-discovery rule is appropriate "where a plaintiff demonstrates that his injury was inherently unknowable at the time he was injured" or "where the Government conceals its negligent acts so that the plaintiff is unaware of their existence.").

[7] Thus, plaintiff's claim began to accrue when plaintiff knew of both his injury and its cause. As defendant recognizes, the Ninth Circuit has consistently found that plaintiff need not know the identity of the person who caused his injury to trigger the statute of limitations. *See Dyniewicz,* 742 F.2d at 486 ("Discovery of the cause of one's injury, however, does not mean knowing who is responsible for it."); *see also In re Swine Flu Prod. Liab. Litig.,* 764 F.2d 637, 640 (9th Cir.1985) ("The 'cause' is known when the immediate physical *1129 cause of the injury is discovered."). In *Gibson v. United States,* 781 F.2d 1334 (9th Cir.1986), the Ninth Circuit held plaintiffs' claim accrued when they knew their property had been destroyed by fire. It was irrelevant that plaintiffs were unaware of the government's complicity in this action. Similarly, in *Dyniewicz,* 742 F.2d at 487, plaintiffs' claim accrued when they knew their injury was caused by a flooded highway, notwithstanding their ignorance about the government's negligence. Ritchie knew of his injury (intoxication) in 1957. Accordingly, plaintiff's claim accrued once he knew of its physical cause--ingestion of LSD. Plaintiff's "ignorance of the involvement of United States employees is irrelevant." *Dyniewicz,* 742 F.2d at 487. [FN9]

> FN9. Plaintiff's reliance on *Bibeau v. Pacific N.W. Res. Found., Inc.,* 188 F.3d 1105, 1108 & n. 2 (9th Cir.1999), is inappropriate. Although *Bibeau* states that the statute of limitations "begins to run once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and *who has inflicted the injury.*' " (emphasis added) (quoting *United States v. Kubrick,* 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)), the identity of the defendant was not at issue in *Bibeau.* Thus, the latter part of this statement was dictum. *See Clavette v. Sweeney,* 132 F.Supp.2d 864, 874 (D.Or.2001) (so holding). Allowing this construction would extend *Kubrick* in a manner previously rejected by the Ninth Circuit. *See Gibson v. United States,* 781 F.2d 1334, 1344 (9th Cir.1986) (citing *Kubrick* for the limited proposition that "under the FTCA, a claim accrues when the plaintiff knows of his injury and its cause" and declining to "stretch the boundaries of the *Kubrick* decision to delay accrual of a federal tort claim until plaintiff knows or has reason to know of the culpability of federal agents") (citation omitted).

The court recognizes the likelihood that plaintiff's discovery of both the physical cause of his injury and the role of the government would have been contemporaneous. A reasonable person who had never used LSD would not think he had been exposed to it. It is quite possible this thought would not have entered plaintiff's mind absent knowledge that the government was giving LSD to unwitting civilians.

Plaintiff maintains that he did not have reason to believe his injury was caused by LSD until he read

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120

210 F.Supp.2d 1120

Page 10

**(Cite as: 210 F.Supp.2d 1120)**

Dr. Gottlieb's obituary in March 1999. Because there is no evidence that plaintiff actually knew the cause of his intoxication, the government's statute of limitations defense ultimately turns on whether he failed to exercise due diligence in discovering it.

Defendant emphasizes the extensive coverage of MKULTRA in literature and the media since the 1970s. *See* Ritchie Dep., Exhs. A-C (various articles) & X (listing books); CBS, NBC, ABC nightly news segments (filed by defendant, Mar. 4, 2002). The mere existence of these materials, however, does not mean that plaintiff should have seen them. *Bibeau v. Pacific N.W. Res. Found. Inc.,* 188 F.3d 1105, 1110 (9th Cir.1999) ("It is true that many news articles were published regarding the experiments.... However, that doesn't mean that Bibeau must be lying about his ignorance, or that a reasonable man would necessarily have discovered the truth"); *In re Swine Flu,* 764 F.2d at 641 ("[Plaintiff] cannot be held accountable as a matter of law for press accounts in late 1976 or 1977"); *Orlikow,* 682 F.Supp. 77, 84-85 (D.D.C.1988) (statute of limitations does not begin to run with publication). To the contrary, plaintiff denies having seen virtually all of these publications before 1999. *See* Ritchie Dep. 170-71; Ritchie Dec. (April 30, 2002) ¶¶ 3 & 4.

Although plaintiff concedes reading one article detailing the government's experimentation with mind-control, *see* Ritchie Dep. at 22-23, 26, 197-210, 283-84 & Exh. B-12, he did not investigate the CIA's *1130 potential involvement in his injury. *Id.* at 283-84. This is not surprising. The article discusses limited experimentation with prostitutes. *Id.* Exh. B-12 ("CIA paid addict prostitutes $100 a day to lure customers and then lace their drinks with experimental drugs"). Although the article mentions the use of "experimental drugs," it does not mention LSD by name. Plaintiff need not extrapolate from an article about the administration of "experimental drugs" and "T-drugs" (marijuana) on prostitutes to his own experiences. Defendant demands too much.

The government also highlights congressional testimony and investigations about MKULTRA.

*See* McGinn Dec. (Mar. 4, 2002) ¶¶ 8, 12-14, 18. The fact that these investigations occurred does not mean that plaintiff was aware of them. *See Bibeau,* 188 F.3d at 1111 (refusing to find that individuals "are aware of every report, white paper and floor statement delivered within the halls of the legislature."). Even if plaintiff *were* aware of these investigations, this knowledge would not necessarily put him on notice that he had been injured in 1957.

Plaintiff had apparently heard of LSD in the 1970s. Ritchie Dep. 278-81. He knew that LSD was a "mind-altering drug" that could cause a "bad trip" and "depression." *Id.* Defendant invites the court to find that plaintiff should have known he was given LSD in 1957 because he felt depressed and self-destructive at that time. Ritchie Dep. at 109-10, 124. The court declines this invitation. Self-destructiveness and depression are consistent with other injuries.

At oral argument, defendant repeatedly insisted that plaintiff should have "connected the dots," discovering the cause of his injury before 1997. The much touted "dots," however, were merely dim and distant stars in a cloudy sky. It would take an extraordinary knowledge of astronomy for a reasonable person to connect an article about drug experimentation on prostitutes, an awareness that LSD was an illegal drug that could cause a "bad trip," and a single reference to a federal employee working in San Francisco to conclude that he had committed a crime while under the influence of LSD in 1957. Even after connecting these dots, one is left with only a nebulous constellation. These points finally and only coalesced after plaintiff read Gottlieb's obituary in 1999, which explicitly stated that the CIA had given "mind-altering drugs to hundreds of unsuspecting Americans" in the 1950s. Ritchie Dep., Exh. C.

[8] Defendant has failed to prove as a matter of law that plaintiff knew or should have known his injury was caused by LSD before 1997. This remains a question of fact for the jury. *See Bibeau,* 188 F.3d at 1110 ("All of these factors and the inferences that can be drawn from them present questions of fact

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

210 F.Supp.2d 1120                                                                                                    Page 11
210 F.Supp.2d 1120
**(Cite as: 210 F.Supp.2d 1120)**

for a jury to resolve"); *cf. In re Swine Flu,* 764 F.2d at 641 (additional fact-finding necessary to determine if general community awareness obligated plaintiff to know the cause of his wife's death).

IV. *Laches*

Defendant contends that plaintiff's claims are barred by laches. To prevail, defendant must demonstrate that plaintiff "inexcusably delayed the pursuit of [his] claim," causing prejudice. *United States v. Marolf,* 173 F.3d 1213, 1218 (9th Cir.1999). For the reasons discussed above, defendant has failed to prove that plaintiff knew or should have known that his injury was caused by LSD before he read Dr. Gottlieb's obituary in March 1999. Absent this proof, the court cannot find plaintiff's delay "inexcusable." Defendant's motion is denied.

*1131 CONCLUSION

For the reasons stated above, the court DENIES defendant's motion in its entirety.

IT IS SO ORDERED.

210 F.Supp.2d 1120

**Motions, Pleadings and Filings (Back to top)**

• 3:00CV03940  (Docket)
                                  (Oct. 25, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.